**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:25-cv-21165**

ECHO DEVELOPMENT,

        Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS,
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

        Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff ECHO DEVELOPMENT[1] ("Echo" or "Plaintiff") by and through its undersigned counsel, brings this Complaint against Defendants, the Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" hereto (collectively "Defendants"), who are promoting, manufacturing, selling, offering for sale and distributing goods infringing, bearing or using counterfeits and confusingly similar imitations of Plaintiff's intellectual property within

---

[1] Since it is unknown when Plaintiff's forthcoming *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets will be ruled on, Plaintiff's name has been removed to prevent Defendants from getting advanced notice. Copyright piracy and infringement lawsuits like this one are closely monitored by Chinese defendants on websites like www.sellerdefense.cn, social media (QQ, WeChat, etc.), and elsewhere on the internet. The www.sellerdefense.cn website and others warn infringers specifically of product types, brands, law firms filing cases, and other information necessary for defendants, like those named in this case, to evade Plaintiff's anti-pirating and anti-counterfeiting efforts and hide their ill-gotten gains. Pursuant to the Court's order on Plaintiff's forthcoming Motion to Seal Certain Documents Containing Identifying Information About the Defendants, Plaintiff will file an Unredacted Complaint which identifies Plaintiff's copyrights and provides additional information and allegations once the record is unsealed.

[1] Schedule "A" to this Complaint will be filed under seal after this Honorable Court rules on Plaintiff's Motion to Seal, which will be submitted as soon as the case is opened, and the judge is assigned.

this district through various Internet based e-commerce stores using the seller identities as set forth on Schedule "A" hereto (the "Seller IDs"), and in support of its claims, alleges as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff ECHO brings this action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") (Fla. Stat. §§ 501.201-.213).

2.      Plaintiff ECHO brings this action for willful copyright infringement and piracy committed for purposes of commercial advantage or private financial gain by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. §501, and for all the remedies available under the Copyright Act 17 U.S.C. § 101, *et seq.*, and The All Writs Act, 28 U.S.C. § 1651(a).

3.      Plaintiff ECHO brings this action for willful patent infringement under 35 U.S.C. § 271 committed in violation of the Plaintiff's exclusive rights to make, use, offer to sell, or sell Plaintiff's patented invention, within the United States or for importation into the United States any patented invention during the term of the patent-in-suit, and for all the remedies available under 35 U.S.C. §§ 283, 284, and 285.

## SUBJECT MATTER JURISDICTION

4.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

5.      This Court has original and exclusive subject matter jurisdiction over this action pursuant to 35 U.S.C. § 271.

6.      This court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 17 U.S.C. § 301.

7.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION

8.      Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Florida and this district, through at least the internet-based e-commerce stores accessible in Florida and operating under their Seller IDs.

9.      Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of Florida cause Plaintiff injury in Florida, and Plaintiff's claims arise out of those activities.

10.     Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## VENUE

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are not residents in the United States and therefore there is no district in which an action may otherwise be brought. Defendants are thus subject to the Court's personal jurisdiction.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm

within this district by advertising, offering to sell, selling and/or shipping infringing products to consumers into this district.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §1400(b) because Defendants or their agents reside or may be found in this judicial district and therefore subject to the Court's personal jurisdiction.

## THE PLAINTIFF

14.      ECHO is [REDACTED] company, with its principal place of business in [REDACTED].

15.     Plaintiff is a small family business founded by [REDACTED].

16.     [REDACTED]. ECHO then began selling the [REDACTED] on Amazon, [REDACTED].

17.     Plaintiff currently sells [REDACTED], registered as trademarks at the U.S. Patent and Trademark Office, Reg. No. [REDACTED].

18.     Plaintiff's high-end [REDACTED] are sold online [REDACTED].

19.     Plaintiff owns, as part of its intellectual property portfolio, the trademark, copyrights, and the utility patent described below that are the subject of this action.

20.     Plaintiff offers for sale and sells its products within the state of Florida, including this district, and throughout the United States.

21.     Like many other intellectual property rights owners, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of infringers and counterfeiters, such as Defendants herein.

22.     Plaintiff is harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

23.     In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Plaintiff expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

24.     The recent explosion of infringement over the Internet has created an environment that requires companies like Plaintiff's to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of Plaintiff's intellectual property rights, including consumer confusion and the erosion of Plaintiff's brand.

## PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS

### A.     PLAINTIFF'S TRADEMARK RIGHTS

25.     Plaintiff created and sells its [REDACTED] under the federally registered trademark [REDACTED] (the "[REDACTED] Mark"), consisting of standard characters without claim to any particular font style, size or color.

26.     Plaintiff is the owner of all rights in and to the [REDACTED] Mark, U.S. Reg. No. [REDACTED], and shown in **Exhibit 1**[2] attached hereto, which is valid and registered on the Principal Register of the United States Patent and Trademark Office.

27.     Plaintiff's [REDACTED] Mark consists of the wording "[REDACTED]" in standard character, without claim to any particular font style, size, or color. The [REDACTED] Mark was first used on [REDACTED].

28.     The [REDACTED] Mark is used in connection with the manufacture and distribution of Plaintiff's high-quality patented products.

---

[2] Omitted in initial filing. Plaintiff will attach Exhibit 1 to the Unredacted Complaint.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

29.     The [REDACTED] Mark is displayed on the packaging used for selling the products. Shown below is the [REDACTED] Mark as it is used in relation to Plaintiff's patented products.

[REDACTED]

30.     The [REDACTED] Mark has been used in interstate commerce to identify and distinguish Plaintiff's high-quality patented [REDACTED] for an extended period of time.

31.     The [REDACTED] Mark has been used by Plaintiff long prior in time to Defendants' use of copies of this trademark.

32.     The [REDACTED] Mark has never been assigned or licensed to any of the Defendants.

33.     The [REDACTED] Mark is a symbol of Plaintiff's quality goods, reputation and goodwill and have never been abandoned.

34.     Plaintiff has carefully monitored and policed the use of the [REDACTED] Mark.

35.     The [REDACTED] Mark is well known and famous (as that term is used in 15 U.S.C. §1125(c)(1)) and has been for several years.

36.     Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the [REDACTED] Mark.

37.     Plaintiff has extensively used, advertised, and promoted the [REDACTED] Mark in the United States in association with the sale of high-quality patented [REDACTED].

38.     Plaintiff has spent substantial resources promoting the [REDACTED] Mark and products bearing and/or using the [REDACTED] Mark.

39.     In recent years, sales of products bearing and/or using the [REDACTED] Mark exceeded hundreds of thousands of dollars within the United States.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

40.     As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the [REDACTED] Mark as being high-quality patented [REDACTED] sponsored and approved by Plaintiff.

41.     Accordingly, the [REDACTED] Mark has achieved secondary meaning as identifiers of high-quality patented [REDACTED].

42.     Genuine goods bearing and/or using the [REDACTED] Mark are widely legitimately advertised and promoted by Plaintiff via the Internet.

43.     Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing have become increasingly important to Plaintiff's overall marketing and consumer education efforts.

44.     Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

45.     Plaintiff's SEO strategies allow Plaintiff to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the [REDACTED] Mark.

## B.     PLAINTIFF'S COPYRIGHT RIGHTS

46.     Plaintiff advertises, markets, promotes, and sells its products under [REDACTED] Mark using photographs that are protected by copyright and registered with the Copyright Office (collectively, the "Copyrighted Works").

47.     The Copyrighted Works are duly registered with the Register of Copyrights as visual materials as shown in the table below. A true and correct copy of the Certificate of Registration and the photographs it applies to is attached hereto as **Exhibit 2**.[3]

---

[3] Omitted in initial filing. Plaintiff will attach Exhibit 2 to the Unredacted Complaint.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

| **Copyright Title and Description** | **Reg. No.** | **Reg. Date** | **Exhibit** |
|---|---|---|---|
| [REDACTED] | [REDACTED] | [REDACTED] | 2 |

48.     The Copyrighted Works claimed as copyrightable subject matter show Plaintiff's high-quality and unique [REDACTED] features, its packaging, and its use [REDACTED] from different perspectives.

49.     Genuine [REDACTED] bearing or sold under the [REDACTED] Mark are widely legitimately advertised and promoted by Plaintiff and its authorized distributors using the Copyrighted Works.

50.     Plaintiff has never granted authorization to anyone to advertise, market, or promote unauthorized goods using the Copyrighted Works.

## C.    PLAINTIFF'S PATENT RIGHTS

51.     Plaintiff owns all right, title, and interests in, and/or has standing to sue for infringement of U.S. Patent No. [REDACTED] entitled [REDACTED]. A true and correct copy of the Patent Registration is attached hereto as **Exhibit 3**[4] (the "[REDACTED] Patent").

52.     The [REDACTED] Patent relates to an improved apparatus [REDACTED].

53.     When a user uses [REDACTED].

54.      Plaintiff's [REDACTED] Patent was issued August 27, 2024, has not expired, is valid, and the maintenance fees are current.

55.     Plaintiff has never granted authorization to anyone to import, make, use, or sell goods using Plaintiff's [REDACTED] Patent.

---

[4] Omitted in initial filing. Plaintiff will attach Exhibit 3 to the Unredacted Complaint.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

56.     At all times relevant, Plaintiff complied with the federal patent marking statute, 35 U.S.C. § 287(a), as shown in **Exhibit 4**[5] attached hereto.

## DEFENDANTS

57.     Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

58.     Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations.

59.     Defendants are engaged in business in Florida but have not appointed an agent for service of process.

60.     Upon information and belief, Defendants have registered, established, or purchased, and maintained their Seller IDs.

61.     Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of commercial Internet based e-commerce stores via the Internet marketplace websites under the Seller IDs.

62.     Defendants are the past and present controlling forces behind the sale of products bearing and/using counterfeits and infringements of Plaintiff's intellectual property rights as described herein operating and using at least the Seller IDs.

63.     Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods bearing and/or using counterfeits and infringements of

---

[5] Omitted in initial filing. Plaintiff will attach Exhibit 4 to the Unredacted Complaint.

Plaintiff's intellectual property rights to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names, websites, or seller identification aliases not yet known to Plaintiff.

64.     Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Florida through the advertisement, offer to sell, sale, and/or shipment of infringing and counterfeits goods into the State.

65.     Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell and/or sell during the registration or maintenance process related to their respective Seller IDs.

66.     Upon information and belief, many Defendants registered and maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting and infringing activities.

67.     Upon information and belief, Defendants will likely continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale infringements of Plaintiff's intellectual property rights unless preliminarily and permanently enjoined.

68.     Defendants use their Internet-based businesses to infringe the intellectual property rights of Plaintiff and others.

69.     Defendants' business names, i.e., the Seller ID's, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of counterfeits and infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities, and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.

70.     Some of the Defendants use individual seller store names and listing title containing the [REDACTED] Mark, and these store names and listing titles are indexed on search engines and compete directly with Plaintiff for space in search results.

71.     The appearance of Defendants' individual seller stores in search engine results undermines Plaintiff's efforts to educate consumers about the value of products sold under the [REDACTED] Mark.

72.     Defendants are using counterfeits and infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller ID's, thereby increasing the value of the Seller ID's and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

73.     Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Florida and causing Plaintiff harm and damage within this jurisdiction.

74.     The natural and intended by product of Defendants' actions, is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights and the destruction of the legitimate market sector in which it operates.

75.     At all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

## **JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER**

76.     Defendants are the individuals, partnerships, and unincorporated associations set forth on Schedule "A" hereto.

77.     Defendants are promoting, selling, offering for sale, and distributing goods infringing, bearing and/or using counterfeits, infringements, and confusingly similar imitations of Plaintiff's intellectual property within this district.

78.     Joinder of all Defendants is permissible based on the permissive party joinder rule of Fed. R. Civ. P. 20(a)(2) that permits the joinder of persons in an action as Defendants where any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all Defendants will arise in the action.

79.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto is permitted because Plaintiff asserts rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

80.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for Plaintiff, Defendants, and this Court.

81.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto will not create any unnecessary delay nor will it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Plaintiff and Defendants alike.

82.     Joinder of the multiple Defendants listed in Schedule "A" is procedural only and does not affect the substantive rights of any Defendant listed on Schedule "A" hereto.

83.     This Court has jurisdiction over the multiple Defendants listed in Schedule "A" hereto. Venue is proper in this Court for this dispute involving the multiple Defendants listed in Schedule "A" hereto.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

84.     Plaintiff's claims against the multiple Defendants listed in Schedule "A" are all transactionally related.

85.     Plaintiff is claiming willful counterfeiting, copyright infringement, and patent infringement against Defendants of Plaintiff's intellectual property.

86.     The actions of all Defendants cause indivisible harm to Plaintiff by Defendants' combined actions engaging in similar counterfeiting and infringing conduct when each is compared to the others.

87.     All Defendants' actions are logically related. All Defendants are all engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendants can easily conceal to avoid any real liability for their actions.

88.     All Defendants are located in foreign jurisdictions, mostly China.

89.     All Defendants undertake efforts to conceal their true identities from Plaintiff, in order to avoid detection for their illegal counterfeiting and infringing activities.

90.     All Defendants have the same or closely related sources for their infringing products with some sourcing from the same upstream source and others sourcing from downstream sources who obtain counterfeit and infringing products from the same upstream sources.

91.     All Defendants take advantage of a set of circumstances the anonymity and mass reach the internet affords to sell counterfeit and infringing goods across international borders and violate Plaintiff's patent rights with impunity.

92.     All Defendants have registered their Seller IDs with one of two online platforms, Amazon and Walmart, for the purpose of engaging in counterfeiting and infringement.

93.     In order to link the defendants to a common source, Plaintiff analyzed shared attributes across products, packaging, distribution patterns, and digital footprints. This involved cross-referencing physical, logistical, and digital evidence to uncover hidden connections in supply chains.

94.     One of the key methodologies Plaintiff used in this process was product attribute analysis. This analysis revealed that all the defendants' products are made of [REDACTED].

95.     Another key methodology was analysis of packaging and labeling. This analysis revealed that the packaging and labeling for all the products is substantially similar or identical.

96.     Another key methodology was analysis of the defendants' e-commerce patterns. The defendants use the identical product photography/descriptions across seller accounts on the same two marketplaces. These defendants often design their online stores to appear as though they are selling genuine [REDACTED] Products while in fact selling infringing versions.

97.     This multi-layered approach taken by Plaintiff establishes provable connections between seemingly disparate defendants.

98.     For example, the overwhelming majority of Defendants who infringe the [REDACTED] Patent advertise the same identical infringing products (illustrated below) to advertise their inferior imitation products, indicating one common source of supply, manufacture or distribution.

**Exemplary Infringing Products Sold on Defendant Internet Stores:**
                                    [REDACTED]

99.     Many Defendants who are Amazon sellers and who infringe the [REDACTED] Patent advertise the same identical packaging for the infringing products (illustrated below) to

advertise their inferior imitation products, indicating one common source of supply, manufacture or distribution.

**Exemplary Product Packaging Shown on Defendant Internet Stores:**

[REDACTED]

100.     Many Defendants who are Walmart sellers and who infringe the [REDACTED] Patent advertise the same identical packaging for the infringing products (illustrated below) to advertise their inferior imitation products, indicating one common source of supply, manufacture or distribution.

Exemplary Product Packaging Shown on Defendant Internet Stores:

[REDACTED]

101.     All Defendants use payment and financial accounts associated with their online storefronts or the online platforms where their online storefronts reside.

102.     All Defendants use their payment and financial accounts to accept, receive, and deposit profits from their counterfeiting and infringing activities.

103.     All Defendants can easily and quickly transfer or conceal their funds in their use payment and financial accounts to avoid detection and liability in the event that the Plaintiff's anti-counterfeiting and anti-pirating efforts are discovered, or Plaintiff obtains a monetary award.

104.     All Defendants violated Plaintiff's intellectual property rights in the United States by the use of common or identical methods.

105.     All Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they may not all engage in direct communication or coordination.

106.     Many of the Defendants are operating multiple internet storefronts and online marketplace seller accounts using different Seller IDs listed on Schedule "A". As a result, there are more Seller IDs than there are Defendants, a fact that will emerge in discovery.

107.     Defendants' business names, i.e., the Seller ID's, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of products infringing the [REDACTED] Mark, the Copyrighted Works, and the [REDACTED] Patent are essential components of Defendants' online activities and are one of the means by which Defendants further their infringement and counterfeiting scheme and cause harm to Plaintiff.

108.     By selling infringing products using the [REDACTED] Mark, the Copyrighted Works, and [REDACTED] Patent, Defendants drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense. Defendants' e-commerce stores selling counterfeits and infringing goods using the [REDACTED] Mark, the Copyrighted Works, and the [REDACTED] Patent appear more relevant and attractive to consumers searching for both Plaintiff's goods and goods sold by Plaintiff's competitors online.

109.     Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Florida and causing Plaintiff harm and damage within this jurisdiction.

110.     The natural and intended by product of Defendants logically related actions is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights and the destruction of the legitimate market sector in which Plaintiff operates.

111.    At all times relevant hereto, Defendants have actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

### DEFENDANTS' INFRINGING ACTIVITIES

112.    Defendants are promoting, advertising, manufacturing, distributing, selling, and/or offering for sale cheap copies of Plaintiff's patented products bearing or using the [REDACTED] Mark and/or the Copyrighted Works, that have substantially the same technical features as the [REDACTED] Patent, infringing Plaintiff's trademark, copyright, and patent rights (the "Infringing Goods") through at least the Internet based e-commerce stores operating under the Seller IDs.

113.    Defendants' Infringing Goods practice at least all elements of one or more claims of the [REDACTED] Patent. Attached as **Exhibit 5**[6] is an infringement opinion of a registered patent lawyer who reviewed the Defendants' Infringing Goods and determined that they infringe all elements of claim 1 of the [REDACTED] Patent.

114.    The infringement opinion contained in **Exhibit 5** contains a claim construction of claim 1 of the [REDACTED] Patent and a claim chart showing images of Defendants' infringing products. For additional reference, shown below is a comparison of Plaintiff's original products and a sample of Defendants' infringing products:

[REDACTED]

---

[6] Omitted in initial filing. Plaintiff will attach Exhibit 5 to the Unredacted Complaint.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

115.    Specifically, Defendants are selling infringing products using the [REDACTED] Patent to initially attract online customers and drive them to Defendants' e-commerce stores operating under the Seller IDs.

116.    Some of the Defendants are using identical or similar marks to the [REDACTED] Mark for different quality goods.

117.    Plaintiff has used [REDACTED] Patent extensively and continuously before Defendants began offering infringing products that have substantially the same technical features as the [REDACTED] Patent.

118.    Plaintiff has used the [REDACTED] Mark and Copyrighted Works extensively and continuously before Defendants began offering counterfeits, infringements, and confusingly similar imitations of Plaintiff's merchandise.

119.    Upon information and belief, Defendants' Infringing Goods are of a quality substantially different than that of Plaintiff's genuine goods with the [REDACTED] Mark and the [REDACTED] Patent.

120.    Defendants are actively using, promoting and otherwise advertising, distributing, manufacturing, selling and/or offering for sale substantial quantities of their Infringing Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiff, despite Defendants' knowledge that they are without authority to use the [REDACTED] Mark, the Copyrighted Works, or the [REDACTED] Patent.

121.    The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale on Defendants' e-commerce stores are genuine goods originating from, associated with, and approved by Plaintiff.

122.     Defendants advertise their e-commerce stores, including their Infringing Goods offered for sale, to the consuming public via e-commerce stores on at least one Internet marketplace website operating under, at least, the Seller IDs.

123.     In so advertising their stores and products, Defendants improperly and unlawfully use the [REDACTED] Mark, the Copyrighted Works, and the [REDACTED] Patent without Plaintiff's permission.

124.     As part of their overall infringement and counterfeiting scheme, most Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based in large measure upon an illegal use of the [REDACTED] Mark, the Copyrighted Works, and the[REDACTED] Patent.

125.     Some of the Defendants are using counterfeits and infringements of the [REDACTED] Mark in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiff's goods and goods sold by Plaintiff's competitors online.

126.     By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.

127.     Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's business and its intellectual property assets, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

128.     Defendants are concurrently conducting and targeting their infringing counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

129.     As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

130.     Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the [REDACTED] Mark, the Copyrighted Works, and the [REDACTED] Patent, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

131.     Defendants' use of the [REDACTED] Mark, the Copyrighted Works, and the [REDACTED] Patent, including the promotion and advertisement, manufacturing, distribution, sale and offering for sale of their Infringing Goods, is without Plaintiff's consent or authorization.

132.     Defendants are engaging in the above-described illegal infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's patent rights for the purpose of trading on Plaintiff's goodwill and reputation.

133.     If Defendants' intentional infringing and counterfeiting activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

134.     Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

135.     Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Infringing Goods, which there is not.

136.    Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A", are being used by Defendants to accept, receive, and deposit profits from Defendants' counterfeiting and infringing activities connected to their Seller IDs and any other alias, e-commerce stores, or seller identification names being used and/or controlled by them.

137.    Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff.

138.    Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and its wrongful use of Plaintiff's intellectual property rights.

139.    If Defendants' counterfeiting, infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

140.     The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful use, advertisement, promotion, manufacturing, distribution, offers to sell, and sale of their Infringing Goods using the [REDACTED] Mark, the Copyrighted Works, and the [REDACTED] Patent.

141.    Defendants have sold their counterfeit and infringing products in competition directly with Plaintiff's genuine products.

142.    Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Plaintiff's [REDACTED] Mark, the Copyrighted Works, or the [REDACTED] Patent.

143.    Plaintiff has no adequate remedy at law.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

144.     Defendants' infringing activities are likely to cause and, are actually causing, confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Infringing Goods using without authorization the [REDACTED] Mark, the Copyrighted Works, and the [REDACTED] Patent.

145.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' infringing actions.

## COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

146.     Plaintiff incorporates the allegations of paragraphs 1 through 145 of this Complaint as if fully set forth herein.

147.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the [REDACTED] Mark in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Infringing Goods.

148.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of the [REDACTED] Mark.

149.     Defendants are continuously infringing and inducing others to infringe the [REDACTED] Mark by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

150.     Defendants concurrent counterfeiting and infringing activities are likely to cause, and, are actually are causing, confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Infringing Goods.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

151. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

152. Defendants' above-described illegal actions constitute counterfeiting and infringement of the [REDACTED] Mark in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

153. Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

154. If not preliminarily and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

155. Plaintiff incorporates the allegations of paragraphs 1 through 145 of this Complaint as if fully set forth herein.

156. Upon information and belief, Defendants' Infringing Goods bearing, offered for sale, and sold using without authorization the [REDACTED] Mark have been widely advertised and offered for sale throughout the United States via at least one Internet marketplace website.

157. Defendants' Infringing Goods bearing, offered for sale, and sold using copies of the [REDACTED] Mark are virtually identical in appearance to Plaintiff's genuine goods.

158. Defendants' Infringing Goods are different in quality from Plaintiff's goods and are of much lower quality.

159. Defendants' activities are likely to cause confusion in the trade and among the general public, as to at least the origin or sponsorship of their Infringing Goods.

160.    Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Infringing Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

161.    Defendants have authorized infringing uses of the [REDACTED] Mark in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

162.    Defendants have misrepresented to members of the consuming public, that the Infringing Goods being advertised and sold by them are genuine, non-infringing goods.

163.    Defendants are using counterfeits and infringements of the [REDACTED] Mark in order to unfairly compete with Plaintiff and others for space within organic search engine results and social media results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the internet and across social media platforms.

164.    Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

165.    Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

166.    Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III – COMMON LAW TRADEMARK INFRINGEMENT

167.     Plaintiff incorporates the allegations of paragraphs 1 through 145 of this Complaint as if fully set forth herein.

168.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Infringing Goods bearing and/or using identical or similar marks to the [REDACTED] Mark.

169.     Plaintiff is the owner of all common law rights in and to the [REDACTED] Mark.

170.     Defendants, upon information and belief, are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of the [REDACTED] Mark.

171.     Defendants' infringing activities are likely to cause and, are actually causing, confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Infringing Goods bearing and/or using the [REDACTED] Mark.

172.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' infringing actions.

## COUNT IV – VIOLATION OF FLORIDA UNIFORM DECEPTIVE TRADE PRACTICES ACT

## (815 ILCS § 510, et seq.)

173.     Plaintiff incorporates the allegations of paragraphs 1 through 145 of this Complaint as if fully set forth herein.

174.     Defendants have engaged in acts violating Florida law including, but not limited to, passing off their Counterfeit Products as those of Plaintiff, causing a likelihood of confusion as to the source of their goods, causing a likelihood of confusion as to an affiliation, connection, or

association with genuine Plaintiff's products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion among the public.

175.    The foregoing acts constitute a willful violation of FDUPTA (Fla. Stat. §§ 501.201-.213).

176.    Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to their reputation and associated goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## COUNT V – COPYRIGHT INFRINGEMENT

177.    Plaintiff incorporates the allegations of paragraphs 1 through 145 of this Complaint as if fully set forth herein.

178.    Plaintiff has complied in all respects with the Copyright Act of the United States and all other laws governing copyright and secured the exclusive rights and privileges in and to the copyrights at issue in this action.

179.    Pursuant to 17 U.S.C. § 411 (a), Plaintiff registered its copyrights for its advertising and marketing photographs.

180.    Defendants directly infringed Plaintiff's exclusive rights in its copyright registered advertising and marketing photographs under 17 U.S.C. § 106.

181.    Defendants copied, displayed, and distributed Plaintiff's Copyrighted Works and/or prepared derivative works based upon Plaintiff's Copyrighted Works in violation of Plaintiff's exclusive rights under 17 U.S.C. §106(1), (2) and/or (5).

182.    Defendants' conduct constitutes willful and direct copyright infringement of Plaintiff's Copyrighted Works.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

183.    Defendants profited from the direct infringement of the exclusive rights of Plaintiff in the Copyrighted Works under the Copyright Act.

184.    Defendants' infringement is not limited to the copyright infringement listed above. Plaintiff will identify such additional infringement after discovery.

185.    On information and belief, there is a business practice of infringement by Defendants.

186.    Defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

187.    Plaintiff has been damaged by the infringement.

188.    The harm to Plaintiff is irreparable.

189.    Plaintiff is entitled to temporary and permanent injunctive relief from Defendants' willful infringement.

190.    Plaintiff is entitled to recover its actual damages and/or statutory damages, at its election.

191.    Plaintiff is entitled to recover its reasonable costs and attorneys' fees incurred in this action.

## <u>COUNT VI – REMOVAL OR FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION</u>

192.    Plaintiff incorporates the allegations of paragraphs 1 through 145 of this Complaint as if fully set forth herein.

193.    The Copyrighted Works all contained copyright management information ("CMI") as defined by 17 U.S.C. § 1202 including the © symbol, the name of the plaintiff, the title and authorship information for the Copyrighted Works, and other identifying information for the work and plaintiff.

194.     Defendants knowingly and with the intent to enable or facilitate copyright infringement removed CMI from the Copyrighted Works, or distributed the Copyrighted Works knowing that the CMI had been removed, in violation of 17 U.S.C. § 1202(b). An example can be seen below:

[REDACTED]

195.     Alternatively, Defendants knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided CMI that is false.

196.     Defendants committed these acts knowing or having reasonable grounds to know that they will induce, enable, facilitate or conceal infringement of plaintiff's rights in the Copyrighted Works.

197.     Defendants caused, directed and authorized others to commit these acts knowing or having reasonable grounds to know that they will induce, enable, facilitate or conceal infringement of plaintiff's rights in the Copyrighted Works.

198.     Plaintiff has been damaged.

199.     The harm caused to Plaintiff has been irreparable.

## COUNT VII – PATENT INFRINGEMENT

200.     Plaintiff incorporates the allegations of paragraphs 1 through 145 of this Complaint as if fully set forth herein.

201.     Plaintiff owns all right, title, and interests in the U.S. Patent No. [REDACTED].

202.     Within the six years preceding the filing of this Complaint, Defendants are making, using, selling, importing and/or offering to sell products which infringe directly or indirectly of the [REDACTED] Patent both literally and under the doctrine of equivalents.

203.     Defendants have infringed the [REDACTED] Patent and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from manufacturing, distributing, selling, offering for sale, and/or importing the patented inventions as well as the loss of sales stemming from the infringing acts.

204.     Defendants' infringement, contributory infringement and/or inducement to infringe has injured Plaintiff and is, therefore, entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

205.     Defendants' infringement, contributory infringement and/or inducement to infringe has been willful and deliberate because Defendants had notice of or knew of the [REDACTED] Patent and has nonetheless injured and will continue to injure Plaintiff, unless and until this Court enters an injunction, which prohibits further infringement and specifically enjoins further manufacture, use, sale, importation and/or offer for sale of products that come within the scope of the [REDACTED] Patent.

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

A.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C §§ 502 and 503, 35 U.S.C. § 271, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling, or offering to sell their counterfeit and infringing goods using Plaintiff's [REDACTED] Patent, the Copyrighted Works, and the [REDACTED] Mark or any mark or design similar thereto, in

connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the [REDACTED] Mark in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademark and from otherwise unfairly competing with Plaintiff.

B.      Entry of a Temporary Restraining Order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of counterfeit and infringing goods bearing and/or using the [REDACTED] Mark, the Copyrighted Works, and the [REDACTED] Patent.

C.      Entry of an order authorizing seizure, impoundment and/or destruction of all of the products used to perpetrate the infringing acts pursuant to 17 U.S.C. §503.

D.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, distribution, offering to sell, and/or selling counterfeits and infringing goods bearing or using the [REDACTED] Mark, the Copyrighted Works, and the [REDACTED] Patent.

E.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiff's request, any messaging service and Internet marketplace website operators, administrators, registrar and/or top level domain (TLD) registry for the Seller IDs who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with Defendants' respective Seller IDs.

F.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, *inter alia*, a direct platform, group platform, seller product management platform, vendor product management platform, and brand registry platform, any and all listings and associated images of infringing goods bearing or using the [REDACTED] Mark, the

Copyrighted Works, or the [REDACTED] Patent via the e-commerce stores operating under the Seller IDs, including but not limited to the listings and associated images identified by the "parent" and/or "child" Amazon Standard Identification Numbers ("ASIN") on Schedule "A" annexed hereto, and upon Plaintiff's request, any other listings and images of infringing goods bearing or using the [REDACTED] Mark, the Copyrighted Works, or the [REDACTED] Patent associated with any ASIN linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell counterfeit and infringing goods bearing or using the [REDACTED] Mark, the Copyrighted Works, and the [REDACTED] Patent.

G.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's inherent authority that, upon Plaintiff's request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of each Defendant using the [REDACTED] Mark, the Copyrighted Works, and the[REDACTED] Patent in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

H.      Entry of an Order requiring Defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public.

I.      Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided

for under 15 U.S.C.§ 1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

      J.     Entry of an Order requiring defendants to pay Plaintiff for all profits and damages resulting from Defendant's violations of 17 U.S.C. § 1202 or statutory damages (at Plaintiff's election) per violation, for which Defendants shall be liable in a sum per violation of not less than $2,500 or more than $25,000 per violation pursuant to 17 U.S.C. §1203.

      K.     Entry of an Order requiring Defendant to account to and pay Plaintiff for all profits and damages resulting from Defendant's copyright infringement, or statutory damages (at Plaintiff's election), for all infringements involved in the action, with respect to any one work, for which Defendant is liable in a sum of not less than $750 or more than $30,000 as the Court considers just pursuant to 17 U.S.C. §504(c)(1), or to the extent the Court finds that infringement was committed willfully, an award of statutory damages to a sum of not more than $150,000 per violation, pursuant to 17 U.S.C. §504(c)(2).

      L.     Entry of an Order requiring Defendants to account to and pay Plaintiff damages for patent infringement in an amount to be determined by the Court pursuant to 35 U.S.C. § 284 which shall in no event be less than a reasonable royalty.

      M.     Entry of an award pursuant to 35 U.S.C § 285, 15 U.S.C. § 1117 (a) and (b), as well as 17 U.S.C. §§ 504 and 1203 of Plaintiff's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

N.      Entry of an Order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

O.      Entry of an award of pre-judgment interest on the judgment amount.

P.      Entry of an Order for any further relief as the Court may deem just and proper.

DATED: March 12, 2025                 Respectfully submitted,

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar Number: 98220
joel.rothman@sriplaw.com
ANGELA M. NIEVES
Florida Bar Number:  1032760
angela.nieves@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road, Suite 100
Boca Raton, FL 33434
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff ECHO Development*